**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| THE ESTATE OF KATHY RITNER, by and through Special Administrator, MATTHEW RITNER; and MATTHEW RITNER, individually and as natural father and legal guardian of GRACE RITNER, a minor, and JOHN RITNER, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY; LAS VEGAS METROPOLITAN POLICE DEPARTMENT; and DOUGLAS GILLESPIE, individually and in his official capacity as LVMPD SHERIFF,<br><br>Defendants. | Case No. 2:15-cv-02444-APG-CWH<br><br>**ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS**<br><br>ECF No. 7 |

This action arises out of the unfortunate death of Kathy Ritner while she was in custody at the Clark County Detention Center ("CCDC"). On December 27, 2013, Ms. Ritner was found in her cell at CCDC having hung herself with a bedsheet. At the time of her death, Ms. Ritner was married to plaintiff Matthew Ritner, with whom she had two minor children: plaintiffs Grace Ritner and John Ritner.

Mr. Ritner, individually, as Special Administrator of the Estate of Kathy Ritner, and as natural father and legal guardian of Grace and John, filed the complaint alleging that Clark County, the Las Vegas Metropolitan Police Department ("LVMPD"), and former LVMPD Sheriff Douglas Gillespie violated Ms. Ritner's constitutional rights and committed various state law torts that resulted in Ms. Ritner being able to commit suicide while in CCDC custody. The plaintiffs assert claims against all the defendants under 42 U.S.C. § 1983 for cruel and unusual punishment and loss of familial relationship under the Fourteenth Amendment. They also assert various state law claims.

1    On January 25, 2016, the plaintiffs voluntarily dismissed all claims against defendant
2 Clark County. ECF No. 13.  LVMPD and Gillespie now move to dismiss: (1) all claims against
3 Gillespie; (2) certain constitutional claims against LVMPD; (3) the negligent training and
4 supervision claim against LVMPD; and (4) certain constitutional and state law claims brought on
5 behalf of the individual plaintiffs.  For the reasons set forth below, I grant the defendants' motion
6 to dismiss.

**I.   BACKGROUND**

   The following facts are alleged in the complaint.  On December 3, 2013, Ms. Ritner was
arrested and booked into the City of Las Vegas jail for a misdemeanor charge. ECF No. 1 at 4.
On December 10, she was transferred from the city jail to CCDC after the Nevada Department of
Public Safety reported that she had violated her probation for a prior offense. *Id.* at 4-5.  During
booking at CCDC, Ms. Ritner was asked whether she was suicidal and she said no. *Id.* at 5.
CCDC officials were aware of her past suicidal tendencies and then-current mental illnesses
because she had attempted suicide and had suicidal thoughts during previous incarcerations at
CCDC. *Id.*  She was placed in a general medical population section of CCDC where she shared a
cell with another inmate and spent time in the day room with other inmates. *Id.*

   On December 14, 2013, Ms. Ritner was transferred to a medical isolation unit after she
allegedly interfered with medical staff providing assistance to another inmate. *Id.* at 6.  In the
isolation unit, inmates are housed in single-occupancy cells and are not permitted to spend time in
the day room with other inmates. *Id.*  Despite her history of suicidal tendencies and mental illness,
Ms. Ritner was not reassessed by CCDC staff for suicide potential before being placed in the
isolation unit. *Id.*  Ms. Ritner was never provided meaningful mental health counseling during her
time in the isolation cell. *Id.*

   CCDC officers perform "room checks" on inmates in single-occupancy cells every thirty
minutes. *Id.*  CCDC has stated it adheres to the American Correctional Association's ("ACA")
"Core Jail Standards," which state that inmates should be observed every thirty minutes, but that
more frequent observation is needed for inmates who are "violent, suicidal, mentally disordered

or who demonstrate unusual or bizarre behavior." *Id.* at 6-7.  The defendants "were aware that it takes about fifteen minutes to induce total asphyxia." *Id.* at 7.

At about 11:30 a.m. on December 27, a CCDC officer checked the cells in Ms. Ritner's unit and saw no abnormal conduct or circumstances in her cell. *Id.*  Roughly thirty minutes later, at 12:01 p.m., another CCDC officer checked the unit and did not see Ms. Ritner through her cell door window. *Id.*  After calling for her and hearing no response, the officer entered the cell and found her unresponsive, with one side of a bedsheet tied around her neck and the other side attached to the toilet/sink unit in the cell. *Id.*  The complaint alleges that medical personnel were called to the room and attempted to resuscitate Ms. Ritner but were unable to do so; they pronounced her dead at 12:28 p.m. *Id.*

The cell in which Ms. Ritner was housed had an older, outdated, and unsafe flushing mechanism on the toilet/sink unit which allowed Ms. Ritner to hang herself. *Id.* at 8.  At the time of Ms. Ritner's death, CCDC and LVMPD officials were aware that inmates at CCDC were at a higher risk of suicide because of inadequate policies and safety procedures at the facility. *Id.*  The plaintiffs allege that the inadequate suicide prevention procedures and policies at CCDC date back to the 1990s, citing a 1998 investigation into CCDC's operations by the Department of Justice's ("DOJ") Civil Rights Division and a subsequent letter from the U.S. Attorney General's Office detailing the results of the investigation. *Id.* at 8-9.

**II.   ANALYSIS**

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a

complaint must "contain[ ] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation and citations omitted).

I must apply a two-step approach when considering motions to dismiss. *Id*. at 679. First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id*.; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. 678.

Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

If I dismiss a claim, I must next determine whether to allow amendment to cure the claim's deficiencies. I have discretion to grant leave and should do so "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). I may deny leave to amend if: (1) it will cause undue delay; (2) it will cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

/ / / /

### A. Claims Against Gillespie in his Official Capacity

The defendants argue that the claims against Gillespie in his official capacity as former sheriff of LVMPD should be dismissed. They contend that a suit against an individual in his official capacity is akin to naming the government entity to which he belongs. Because LVMPD is a defendant in this case, they argue it is unnecessary to name Gillespie in his official capacity. The plaintiffs respond that dismissal of a redundant defendant is not required and that Gillespie was sued in his official capacity because he was the policymaker responsible for the inadequate policies and procedures at CCDC. The plaintiffs argue that neither LVMPD nor Gillespie is at risk of unfair prejudice or undue liability based on the complaint and forcing them to remove Sheriff Gillespie in his official capacity is unnecessary because it would have no material impact on the litigation. ECF No. 16 at 5-6.

"A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); *see also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 n.55 (1978). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 553 F.3d 780, 799 (9th Cir. 2008).

Here, the plaintiffs sued Gillespie in his official and individual capacities and asserted all seven of their claims against all of the defendants. The claims against Gillespie in his official capacity are equivalent to the claims against LVMPD and are therefore redundant. I dismiss the claims against Gillespie in his official capacity with prejudice.

### B. Claims Against Gillespie in his Individual Capacity

The complaint also names Gillespie in his individual capacity for all claims. The defendants move to dismiss the § 1983, negligence, negligent training and supervision, and vicarious liability claims against Gillespie in his individual capacity.

/ / / /

/ / / /

**1.**     *Section 1983 Claims*

The defendants argue that the plaintiffs have failed to plead sufficient facts for their § 1983 claims against Gillespie in his individual capacity. They contend that the complaint merely identifies Gillespie as the government official ultimately in charge of operations at CCDC. The defendants argue that because a § 1983 claim must assert that Gillespie either personally participated in or directed the alleged violations, the complaint fails to plead sufficient facts.

The plaintiffs respond that Gillespie can be held liable under § 1983 as a supervisor if there is a sufficient causal connection between his wrongful conduct and the constitutional violation. They argue that the DOJ Civil Rights Division investigated CCDC and sent CCDC its findings, thus putting CCDC officials on notice that its conditions and classification procedures created a risk of suicide. They contend that Gillespie's knowledge of this problem and failure to act evidences his deliberate indifference to Ms. Ritner's constitutional rights.

The defendants reply that the DOJ's findings were sent to CCDC nine years before Gillespie was elected sheriff and 16 years before Ms. Ritner's death. They also note that the complaint alleges that the defendants have pledged adherence to the ACA's Core Jail Standards. Thus, the plaintiffs appear to be alleging that because Gillespie did not create policies based on a nine year old letter which was not addressed to him and which contains different standards than the ACA's Core Jail Standards, he was deliberately indifferent to Ms. Ritner's constitutional rights. The defendants argue that these allegations do not plausibly state a claim under § 1983 for supervisory liability.

Under § 1983, liability may not be imposed on a supervisor for the actions of his employees under a theory of *respondeat superior*. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, when the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically established. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). Thus, the plaintiffs must demonstrate that Gillespie either (1) was personally involved in the constitutional deprivation, or (2) that there was a

sufficient causal connection between his wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and quotation omitted). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045; *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) ("the requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury" (quotation and citation omitted)).

The plaintiffs allege that Gillespie acted with deliberate indifference to Ms. Ritner's constitutional rights by implementing and failing to remedy policies that created inadequate supervision, screening, and treatment within CCDC. The plaintiffs further state that Gillespie, as a supervisor and policymaker at CCDC, was aware of the inadequate policies causing the deprivation of Ms. Ritner's rights and failed to remedy those deficiencies. However, the plaintiffs have failed to allege any facts that create a reasonable inference either that the problems uncovered through the DOJ investigation were not fixed by the time Gillespie was appointed to his position as sheriff or by the time of Ms. Ritner's death, or that Gillespie knew of any ongoing problems. While the complaint references an allegedly outdated sink/toilet unit in Ms. Ritner's cell, it is unclear if this issue was outlined in the 1998 letter such that Gillespie should have known of it. It is also unclear if the plaintiffs are attempting to allege that failure to remove or update the unit constituted deliberate indifference on the part of Gillespie. Besides reference to the 1998 letter and the outdated sink/toilet unit, the plaintiffs' allegations are conclusory. Thus, the complaint does not state sufficient facts to support that Gillespie was aware of ongoing problems at CCDC related to suicide prevention and failed to act.

The plaintiffs have also failed to detail what specific policies or procedures CCDC had in place that they believe to be inadequate and why those policies are inadequate. The complaint alleges that the CCDC officials have pledged adherence to the ACA's Core Jail Standards, which include observing inmates every thirty minutes unless more frequent observation is required in

cases of inmates who are "violent, suicidal, mentally disordered or who demonstrate unusual or bizarre behavior." ECF No. 1 at 6-7.  The complaint then alleges that the defendants were aware that it takes only fifteen minutes to induce asphyxia, that Ritner was transferred to the isolation unit without being reassessed for suicidal potential, and that she was never provided meaningful health counseling.  It is unclear if the plaintiffs are attempting to allege that CCDC officials failed to follow their own suicide prevention procedures (by either monitoring Ms. Ritner more frequently or reassessing her suicidal potential), or, alternatively, that the ACA's Core Jail Standards, as implemented at CCDC by officials like Gillespie, are constitutionally inadequate.

Accepting as true all well-pleaded factual allegations in the complaint, and drawing all reasonable inferences in the plaintiffs' favor, the complaint fails to state a claim for which relief may be granted under § 1983 against Gillespie in his individual capacity.  I thus grant LVMPD's motion to dismiss the § 1983 claims against Gillespie in his individual capacity.  However, I am granting the motion without prejudice.  The plaintiffs may amend the complaint to add facts sufficient state a plausible § 1983 claim against Gillespie, if such facts exist.

### 2. *Negligence Claim*

LVMPD argues that the plaintiffs' negligence claim against Gillespie in his individual capacity should be dismissed because he is statutorily immune from claims based on the actions of his subordinate officers, and because the plaintiffs have failed to provide facts that render the claim plausible on its face.  The plaintiffs respond only that their "[n]egligence cause of action sounds in the acts and/or omissions committed by Gillespie personally.  Resultantly, the [n]egligence cause of action is properly pled against Gillespie and should not be dismissed." ECF No. 16 at 8.

In Nevada, "[n]o action may be brought against . . . [a] sheriff or county assessor which is based solely upon any act or omission of a deputy." Nev. Rev. Stat. ("N.R.S.") § 41.0335(1)(a). Therefore, Gillespie may be found liable for negligence based only on his own acts or omissions. In their complaint, the plaintiffs allege that Gillespie breached his duty to Ms. Ritner by placing

her "into a cell without proper monitoring, diagnosis, or treatment of her mental health condition and failed to monitor, treat and/or prevent her from doing harm to herself." ECF No. 1 at 13.

The plaintiffs offer no facts showing that Gillespie was involved in the decision to place Ms. Ritner into the isolation cell or that he had any knowledge of her placement there. If the plaintiffs are attempting to allege that Gillespie's involvement in policy decisions at CCDC was somehow negligent and breached his duty of care to Ms. Ritner, then more specific factual allegations on this point are needed. I therefore dismiss the plaintiffs' negligence claim against Gillespie in his individual capacity. However, the plaintiffs may amend the complaint to add facts to support such a claim, if such facts exist.

### 3. *Negligent Training and Supervision Claim*

The complaint alleges that Gillespie breached his duty to adequately train and supervise CCDC personnel and implement adequate training and supervisory procedures regarding inmate safety. The defendants argue that Gillespie is entitled to discretionary immunity under N.R.S. § 41.032(2). They argue that training and supervision decisions are the type of policy judgments that discretionary immunity is meant to protect. In response, the plaintiffs argue that Gillespie and LVMPD can be held liable for negligent operational decisions.

N.R.S. § 41.032(2) provides that no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved is abused."

Nevada law uses a two-pronged test to determine whether immunity for a discretionary act applies. First, an act is entitled to discretionary immunity if the decision involved an element of individual judgment or choice. *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007) (*en banc*). Second, the judgment must be "of the kind that the discretionary function exception was designed to shield," including actions "based on considerations of social, economic or political policy." *Id.* at 727-29 (quotations omitted). Therefore, "if the injury-producing conduct is an integral part of

governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branches' power or responsibility will be usurped, immunity will likely attach under the second criteria." *Id.* at 729.

Nevada state courts look to federal case law under the Federal Tort Claims Act for guidance with respect to discretionary immunity. *Id.* at 727-28. With respect to that Act, the Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *see also Gager v. United States*, 149 F.3d 918, 921 (9th Cir. 1998).

The first prong of the test involves determining whether the alleged failure to adequately train CCDC personnel involved an element of individual judgment or choice. *Martinez*, 168 P.3d at 729. The nature of the agent's conduct dictates whether the second prong is answered. *U.S. v. Gaubert*, 499 U.S. 315, 316 (1991). If an employee obeys a regulation directly, the actor will most likely be protected because his actions were taken in furtherance of the policies which led to the regulation. *Id*. If he violates a regulation, he will most likely not be protected because his action is contrary to the policy. *Id.* But if an "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [g]overnment agent to exercise discretion," it is presumed "that the agent's acts are grounded in policy when exercising that discretion." *Id.*

The second prong focuses on the "nature of the actions taken and whether they are susceptible to policy analysis." *Martinez*, 168 P.3d at 445. Courts must assess each case based on its facts, "keeping in mind Congress' purpose in enacting the exception: to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *Id.* at 446 (quotations omitted). Immunity likely will be found if the conduct that produced the injury "is an integral part of governmental policy-making or planning," or if imposing liability on the actor would jeopardize the governmental process or the executive or legislative branches' powers. *Id.*

1 Here, the plaintiffs argue that Gillespie failed to adequately train and supervise CCDC employees, or that he implemented inadequate training and supervisory procedures regarding inmate safety which created an unreasonable risk of inmate harm. As discussed above, it is unclear what the plaintiffs are alleging is inadequate about CCDC's policies. For example, it is unclear if the plaintiffs are alleging that CCDC's policies (allegedly based on the ACA's Core Jail Standards) are themselves inadequate, or if they are alleging that CCDC's standards were adequate but that CCDC personnel were not being trained or supervised to properly administer the standards. The plaintiffs also have not offered any facts about Gillespie's specific misconduct in allegedly failing to train and supervise CCDC personnel, or how his actions are related to either Ms. Ritner's death or to the actions of the officers who placed Ms. Ritner in the isolation cell and were on guard when she died. They have not detailed Gillespie's specific supervisory role at the time of Ms. Ritner's death, other than stating that he was LVMPD sheriff.

Thus, the plaintiffs have failed to set forth specific facts outside of recitation of the elements of the cause of action they wish to pursue. Without more factual detail, it is impossible for me to determine whether discretionary immunity applies to Gillespie (or LVMPD, as detailed below). I therefore dismiss this claim against Gillespie with leave for the plaintiffs to amend their complaint to provide specific facts detailing the specific misconduct of Gillespie and why such actions do not fall within the discretionary function exception of N.R.S. § 41.032(2).

    **4.** *Vicarious Liability Claim*

The defendants move to dismiss the plaintiffs' claim that Gillespie is vicariously liable for the actions of his subordinate officers at CCDC. The plaintiffs concede that Gillespie is not liable under this claim. ECF No. 16 at 8. I therefore dismiss this claim against Gillespie in his individual capacity with prejudice.

  **C.**  **Claims Against LVMPD**

    **1.** *Section 1983 Claims*

The defendants argue that Counts 1 and 2 of the complaint are merely avenues by which the plaintiffs are seeking relief that must rise to the standard of the *Monell* claim they bring

against LVMPD in Count 3. Therefore, they argue that Counts 1 and 2 should be dismissed as to LVMPD and the allegations making up those counts should be consolidated under Count 3. The plaintiffs concede that Counts 1 and 2 identify the specific constitutional rights that were violated and that Count 3 "provides the theory of liability by which the Plaintiffs seek to hold LVMPD liable" for those violations. ECF No. 16 at 9-10. Nevertheless, the plaintiffs argue it is not necessary to dismiss Counts 1 and 2 against LVMPD because that would have no impact on the litigation.

I grant the defendants' motion to dismiss Counts 1 and 2 against LVMPD because they are duplicative of Count 3. The plaintiffs may amend the complaint to consolidate the allegations against LVMPD in Counts 1, 2, and 3 so that they are not duplicative.

### 2. *Negligent Training and Supervision Claim*

The complaint alleges LVMPD breached its duty to adequately train and supervise CCDC personnel and implement adequate training and supervisory procedures regarding inmate safety. For the reasons set forth above, I grant the motion to dismiss this claim because it is unclear from the complaint what the plaintiffs are alleging is inadequate about CCDC's policies, training, and supervision. The plaintiffs may amend the complaint to add sufficient facts to support their claim and to show that the alleged misconduct of LVMPD does not fall within the discretionary function exception of N.R.S. § 41.032(2).

### D. *Claims by Individual Plaintiffs under Counts 1, 4, 5, and 6*

The defendants argue that the plaintiffs' claims of cruel and unusual punishment (Count 1), wrongful death (Count 4), negligence (Count 5), and negligent training and supervision (Count 6) appear to be asserted by all of the plaintiffs. However, the defendants argue that these claims can be brought only by the Estate and not by Matthew Ritner, Grace Ritner, or John Ritner. The plaintiffs agree that these claims can be brought only by the Estate, and they clarify in their opposition that the Estate is the sole plaintiff for those claims. I therefore grant the defendants' motion to dismiss Counts 1, 4, 5, and 6 with prejudice as to the individual plaintiffs, leaving the Estate of Kathy Ritner as the sole plaintiff on those claims.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Las Vegas Metropolitan Police Department's and Douglas Gillespie's motion to dismiss **(ECF No. 7) is GRANTED**. The complaint is dismissed with prejudice as to (1) all claims against defendant Douglas Gillespie in his official capacity, (2) the vicarious liability claim against defendant Douglas Gillespie in his individual capacity, and (3) all claims by the individual plaintiffs under Counts 1, 4, 5, and 6. It is dismissed without prejudice in all other respects.

IT IS FURTHER ORDERED that by October 4, 2016, the plaintiffs may amend the complaint to cure the defects in their claims as outlined in this Order.

DATED this 13th day of September, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE